

100 E. PRATT STREET   SUITE 2440
BALTIMORE, MD  21202-1031
410.332.0444   410.659.0436 fax   www.zuckerman.com

ROBERT T. SHAFFER, III
Partner
410--949-1147
rshaffer@zuckerman.com

October 8, 2014

**VIA CM-ECF**

The Honorable George L. Russell, III
United States District Judge
U.S. District Court, District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

Re:   *Dana Lynn Ridge, et al. v. Dynasplint;*
      Docket No.: GLR-14-378

Dear Judge Russell:

On October 2, 2014, you directed counsel to submit a joint status report within five days, or by October 7.  Counsel for the parties conferred the next day, Friday, October 2.  Plaintiffs' counsel, Mary Olsen, Esquire, agreed to submit an initial draft of a joint status report for our review and comment.  I received plaintiffs' initial draft report on Monday, October 6.  After discussing the initial draft with opposing counsel and advising her of the reasons why we believed the schedule should be modified, I provided our additional written comments the same day.  Upon receiving our proposed edits, plaintiffs' counsel advised me that she would let us know if she had any further comments or changes the next day.

I did not hear from plaintiffs' counsel until late yesterday afternoon. At 5:23 p.m., plaintiffs' counsel sent me by e-mail a complete revision of her initial report, transforming what was supposed to be a relatively simple task of reporting on the status of the case and any request for modification of the current schedule into something radically different.  What plaintiffs' counsel ultimately submitted to us was no longer a status report to the Court, but rather a self-serving and largely inaccurate exposition on matters having little or nothing to do with the status of the case or scheduling. We have never witnessed anything quite like it before, and we are at a loss to understand what may have provoked such a response.  Because we believe Ms. Olsen's last-minute revisions were not what the Court requested, we advised Ms. Olsen late last evening that we could not join in her submission and that we would submit our own status report the next day.



The Honorable George L. Russell, III
October 8, 2014
Page 2

Unless the Court directs otherwise, we will refrain from responding to Ms. Olsen's *ad hominem* attack on defense counsel and our client. There is a place and time for argument. This is neither the time nor the place to express one's views about an opponent's theory of the case, to argue against the merits of a party's defense, or attempt to disparage a witness. We will, of course, respond fully if the Court believes that is necessary or would be helpful.[1] What follows is our view about where the parties are in the case and what matters we believe impact scheduling.

Plaintiffs' counsel's initial draft of the joint status report contained a suggestion that defendant had not fully responded to plaintiffs' discovery. Though we were unaware that any dispute still existed, I advised Ms. Olsen during one of our calls last week that the Court had a procedure for addressing discovery disputes, and that I did not believe the status report was an appropriate forum to raise such matters. I thought that plaintiffs' counsel agreed, because her initial draft status report included a sentence advising the Court that "[t]he parties have agreed to immediately attempt to resolve the discovery issues before requesting the Court's assistance." That sentence has been removed from Ms. Olsen's final submission to the Court. In any event, plaintiffs' counsel has made no attempt to resolve any such dispute.

In fact, no genuine dispute exists. Defendant responded to plaintiffs' initial discovery requests on August 21, 2014, which was followed by a rolling production of more than 4,000 pages of documents that were requested by plaintiffs. Since then, counsel have exchanged e-mail and had one or two telephone conferences to discuss perceived deficiencies in defendant's discovery responses. Throughout this time, plaintiffs' counsel has not identified any particular document request or interrogatory that defendant failed to respond to fully, except for those requests or interrogatories to which defendant raised appropriate objections, in whole or in part. We remain willing to try to work with plaintiffs' counsel to resolve any remaining disputes.

During the course of our discussions about the case, we also explained to plaintiffs' counsel that many of the Dynasplint employees who were laid off on August 6, 2013 were employed in remote office locations or sales regions that we believe constitute separate employment work sites under the WARN Act, each of which must independently satisfy the threshold requirements for purposes of applying the definition of a "mass layoff" under the Act. *See* 29 U.S.C. § 2901(a)(3). Although our discovery produced to plaintiffs included some information about the office location where each laid off employee worked or reported, we do not believe plaintiffs' counsel fully appreciated the significance of this issue until we raised it

---

[1] We also have deliberately chosen not to respond to counsel's recitation of virtually every oral or written communication that we have had since August 6. Many of counsel's summaries are misleading, incomplete, or taken out of context. None of them seems pertinent to the issues before the Court.



**ZUCKERMAN** SPAEDER LLP

The Honorable George L. Russell, III
October 8, 2014
Page 3

with her recently.

Plaintiffs also did not propound specific discovery on this issue of separate employment worksites. However, in the spirit of cooperation, we agreed to provide additional information to plaintiffs regarding Dynasplint's separate employment sites. Defendant is working diligently to gather additional information relevant to this issue. This process is quite burdensome and time-consuming for Dynasplint's greatly-reduced workforce. We expect this process will be completed in the next week or so and could result in a simplification of the issues in the case, including a possibly significant reduction in the size of any putative class, either by agreement of the parties or pursuant to further motions practice, if necessary.[2]

Upon completion of discovery, we also anticipate filing another dispositive motion on the remaining threshold issue that was not fully addressed by the Court's earlier ruling (Doc. #24); *i.e.*, whether the "business circumstances" defense set forth in 29 U.S.C. § 2102(b)(3)) of the WARN Act applies to the August 6 layoffs implemented by Dynasplint, and when it was reasonably practicable for Dynasplint to give its employees notice. Moreover, as noted above, if necessary, Dynasplint may also seek a ruling to exclude from the plaintiffs' claims any employees who were laid off from separate employment sites that do not meet the minimum threshold requirements of the WARN Act.

Plaintiffs plan to conduct at least four depositions, all in the two-week period before discovery is set to close on November 10. At least two of the depositions will require travel out-of-town: BlackBriar, in Dallas, Texas and BB&T in Alpharetta, Georgia. Plaintiffs have advised

---

[2] Plaintiffs suggest that during an earlier stage of the case we were in favor of accelerating rather than prolonging discovery, and that defendant's recent request for a modest extension of certain deadlines constitutes an "about face" and is somehow the result of a "free look" at the plaintiffs' case during a recent confidential mediation. This suggestion is baseless. The written discovery we propounded is boiler-plate, contention discovery having nothing to do with any presentation made by the plaintiffs in mediation (which, as far as we can recall, was nondescript and similar to the views of the case expressed by plaintiffs' counsel in plaintiffs' written demand). It is true that during an earlier stage of the case, after spending considerable time creating a timeline of key events that we thought bore on the potentially dispositive threshold legal issue concerning the "business circumstances" defense referenced above (which we shared with plaintiffs' counsel), we approached Ms. Olsen about focusing the case and discovery on that discrete issue to the exclusion of others (such as class certification, damages, etc.), so that we could obtain an early ruling from the Court on that issue and avoid wasting the parties' and the court's limited resources litigating other issues. Plaintiffs' counsel would not agree to proceed in that manner. Our recent refocus on discovery following an unsuccessful mediation last week has nothing to do with any change in our strategy or defense for this case. It has more to do with our realization that the issues in the case are more numerous and complex than we originally believed—including, for example, the "single site" issue. If we are going to be required to litigate all of the issues at the same time, defendant believes that we will most likely need a modest adjustment of the current schedule.



The Honorable George L. Russell, III
October 8, 2014
Page 4

us that they may want to take additional fact depositions depending on the additional information they receive regarding Dynasplint's separate employment sites.

Defendant anticipates deposing the two named plaintiffs and opposing plaintiffs' motion for class certification. We do not understand Ms. Olsen's objection to our request to depose her clients more than a month before discovery is set to close. In our experience, it is customary in class action litigation to depose the representative plaintiffs. There is certainly no basis to prohibit us from deposing the named plaintiffs merely because we did not advise counsel sooner, or to "strike" defendant's written discovery that was served timely on plaintiffs more than 30 days prior to the discovery cut-off.

We also have raised with plaintiffs' counsel our belief that responses to motions for class certification are often filed in this Court within approximately 30 days, rather than the customary 14 days for general motions. Such motions are often complex and critical to the outcome of a class action case, and therefore usually require additional briefing time. We have proposed to file our response within 21 days.

Given the current status and increasing complexity of the case, we believe the existing discovery and dispositive motions deadlines are somewhat unrealistic and should be modified, as your recent directive seemed to contemplate. We request that the remaining scheduling dates be modified as set forth below. These modest adjustments to the existing schedule will likely streamline the case, accommodate the ongoing collection of information relating to Dynasplint's multiple work sites mentioned above, and will not prejudice any party or the Court.

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Plaintiffs' Motion for Class Certification | 10/15/14 | Per plaintiff, no requested change |
| Defendant's response to Plaintiffs' Motion for Class Certification | By rule, 14 days after service | 21 days after service |
| Plaintiffs' Reply Brief (if any) | By rule, 14 days after service | Per plaintiff, no requested change |
| Close of Discovery | 11/10/14 | 12/30/14 |
| Dispositive Motions | 12/08/14 | 1/23/15 |



The Honorable George L. Russell, III
October 8, 2014
Page 5

We are happy to make ourselves available to participate in a telephone status conference in the event the Court believes these matters would be better addressed during a call with all counsel.  Thank you for your consideration of these matters.

Respectfully submitted,


_____ /s/ Robert T. Shaffer, III_____
Robert T. Shaffer, III

cc:     All counsel of record (VIA CM-ECF)

4643098.1