UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Chambers of<br>**GEORGE L. RUSSELL, III**<br>United States District Judge | | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

August 14, 2015

MEMORANDUM TO COUNSEL RE:     Dana Lynn Ridge, et al. v. Dynasplint
                                                            Civil Action No. GLR-14-378

Dear Counsel:

Pending are Defendant Dynasplint Systems, Inc.'s ("Dynasplint") Motion for Summary Judgment (ECF No. 60) and Plaintiffs', Dana Lynn Ridge and Karissa Albrecht, Cross-Motion for Partial Summary Judgment (ECF No. 61). The Motions are ripe for disposition. Having considered the Motions and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons stated below, the Motions will be denied.

Dynasplint, a family-owned Maryland corporation started in 1981 and based in Severna Park, Maryland, is a supplier of durable medical equipment to healthcare providers and patients around the world. Dynasplint employed Plaintiffs at its Severna Park facility. Around 2001, to finance the growth of its business, Dynasplint began a lending relationship with BB&T Bank ("BB&T") in which Dynasplint borrowed $1 million from BB&T for working capital purposes. In November 2007, BB&T issued Dynasplint a term loan in the principal amount of $9,200,000, at a variable interest rate of prime plus .50 percent per annum with a maturity date of November 8, 2012. Around April 2009, Dynasplint also arranged for a revolving line of credit from BB&T in the maximum principal amount of $9,500,000. Both notes were secured by various assets of Dynasplint and its owner, George R. Hepburn, II.

After several loan modifications, BB&T personnel changes, and the application of various fees, BB&T and Dynasplint entered into the first of a series of nine forbearance agreements, thereby extending the maturity date on a portion of the debt to July 31, 2013. Around March 26, 2013, MidCap Financial, LLC ("MidCap") provided written assurances that it was willing to establish a revolving line of credit for Dynasplint in the amount of $17.5 million to repay the BB&T debt in full. On June 14, 2013, MidCap provided a formal loan commitment letter that would expire if the loan did not close on or before July 31, 2013. At that time, however, Dynasplint was party to a qui tam action in the U.S. District Court for the Eastern District of Louisiana. On or about June 19, 2013, MidCap was advised that the qui tam matter was unlikely to be resolved for $2 million, preventing MidCap from providing the loan as proposed in the commitment letter. On June 19, 2013, MidCap notified Hepburn that it was withdrawing its commitment.

MidCap remained interested in, but not committed to, providing financing if an acceptable resolution of the qui tam matter was reached and periodically followed up with Hepburn to check on the status of the settlement negotiations in hopes that it could ultimately provide financing. On June 19, 2013, Dynasplint entered into an Eighth Forbearance Agreement with BB&T extending the forbearance period to July 22, 2013, to provide Dynasplint time to pursue refinancing with MidCap. On July 19, 2013, BB&T modified the Eighth Forbearance Agreement to extend the expiration of the forbearance period to July 31, 2013. Dynasplint continued to attempt to settle the qui tam matter until July 25, 2013. On July 29, 2013, Hepburn informed BB&T that the MidCap refinancing would not close by July 31,

2013, due to the qui tam matter. BB&T then refused any further extension of the forbearance period, stopped funding Dynasplint's loans, and immediately seized all of Dynasplint's receivables, except for those deposited at Wells Fargo Bank. On August 1, 2013, BB&T filed confessed judgments against Dynasplint and related entities in the principal amount of $11,128,866.89, plus accrued interest in the amount of $45,077.74, and $1,676,091.69 in attorneys' fees.

On August 3, 2013, Hepburn learned that BB&T dishonored Dynasplint's payroll checks and he decided to layoff two-thirds of Dynasplint's employees. On August 5, 2013, Hepburn held a management meeting in which he informed all managers of the need for a drastic reduction in force to continue operations, and directed them to provide a list of thirty percent of their staff members to retain. On August 6, 2013, Hepburn issued a letter to seventy percent of Dynasplint's workforce informing them of the need to terminate their employment immediately, briefly discussing the BB&T issue, and mentioning his plan to recall a substantial portion of those laid off at a later date. Plaintiffs were two of the employees subjected to immediate termination.

On February 7, 2014, Plaintiffs filed a class action suit against Dynasplint in this Court alleging violation of the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act"), 29 U.S.C. § 2101 et seq. (2012). (ECF No. 1). The WARN Act requires employers to provide sixty days advance notice of plant closings or mass layoffs. 29 U.S.C. § 2102(a). One exception to the sixty-day requirement is when the closings or layoffs are caused by "unforeseeable business circumstances." In those cases, "[a]n employer may order a plant closing or mass layoff before the conclusion of the [sixty-day] period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." Id. § 2102(b)(2)(A). When the sixty-day period is shortened or eliminated due to an exception, the employer must still "give as much notice as is practicable" and "give a brief statement of the basis for reducing the notification period." Id. § 2102(b)(3).

The Court previously granted Dynasplint's Motion for Summary Judgment (ECF No. 9) as to the sixty-day notice requirement in 29 U.S.C. § 2102(a), finding that BB&T's actions of sweeping Dynasplint's bank accounts were unforeseeable on June 6, 2013, sixty days before the layoffs. (ECF No. 24). However, the Court denied the Motion as to whether notice was given as soon as practicable and permitted the parties to conduct limited discovery on the question of practicability. (Id.). On January 7, 2015, Dyansplint filed a second Motion for Summary Judgment (ECF No. 60) and Plaintiffs filed a Cross-Motion for Summary Judgment (ECF No. 61).

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48

(alteration in the original). A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

In Dynasplint's Motion, it argues notice could not have been given at any time prior to August 6, 2013, after learning that BB&T stopped funding Dynasplint's loans and immediately seized all of Dynasplint's receivables on August 1, 2013. Dynasplint would be entitled to summary judgment only if it establishes that no reasonable fact trier of fact could conclude that BB&T's actions were foreseeable before August 6, 2013. See Local Union 7107 v. Clinchfield Coal Co., 124 F.3d 639, 642 (4th Cir. 1997) (considering foreseeability of a business circumstance as a question for a triable issue of fact); Smith v. ABC Training Ctr. Of Md., Inc., No. JFM-13-306, 2013 WL 3984630, at *6 (D.Md. Aug. 1, 2013) (same). Dynasplint has not satisfied this burden. A reasonable factfinder could conclude, as Plaintiffs argue in their Motion, that notice should have been given on or about June 19, 2013, when MidCap verbally withdrew its commitment to refinance Dynasplint's debt with BB&T.

A reasonable factfinder could conclude, however, that BB&T's actions were not reasonably foreseeable on June 19, 2013. In fact, on June 20, 2013, and July 19, 2013, BB&T further extended the forbearance period to allow Dynasplint to seek refinancing.[1] Though MidCap withdrew its commitment on June 19, 2013, it asserted that it would be willing to reengage its commitment with Dynasplint if the pending qui tam matter settled for $2 million or less. Dynasplint continued to attempt to resolve the qui tam action until July 25, 2013. A reasonable factfinder, therefore, could conclude that BB&T's actions were not foreseeable until Dynasplint knew it would not be able to resolve the qui tam matter, on July 25, 2013. Accordingly, the Court finds that a genuine issue of material fact exists as to whether Dynasplint provided its employees "as much notice as is practicable."

Additionally, Plaintiffs argue Dynasplint's notice was legally deficient. When the sixty-day period is eliminated due to an exception, the employer must "give a brief statement of the basis of reducing the notification period." 29 U.S.C. § 2102(B)(3). The statement should "set forth the underlying factual events which led to the shortened period, thereby allowing workers to understand the employer's situation and its reasons for shortening the notice period." Childress v. Darby Lumber Inc., 126 F.Supp.2d 1310, 1317 (D.Mont. 2011) (citing Alarcon v. Keller Indus., Inc., 27 F.3d 386, 389 (9th Cir. 1994)). "[A]lthough the statement may be brief, it is not enough for an employer simply to cite a statutory exception . . . . Instead, the company must give some indication of the factual circumstances that

---

[1] When extending the forbearance period, BB&T relied on MidCap's commitment letter to finance Dynasplint and was not aware that the commitment was withdrawn. Plaintiffs argue Dynasplint purposefully failed to disclose that the commitment was withdrawn because it knew BB&T would "pull the plug on [Dynasplint]." (EFC No. 65). Hepburn, however, believed that MidCap remained interested in refinancing its loan with BB&T, and he was not aware that BB&T would refuse a further extension of the forbearance period and sweep its accounts until August 3, 2013. (Hepburn Dep. 161:6-21, ECF No. 60-5). The Court, therefore, finds that a genuine dispute of material fact exists as to the reasons why Hepburn failed to disclose that MidCap withdrew its commitment.

made an exception to the statutory notice requirement applicable, providing an adequate, specific explanation to affected workers." Alarcon, 27 F.3d at 390.

Moreover, the notice must also include:

> (1) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (2) the expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (3) an indication whether or not bumping rights exist; [and] (4) the name and telephone number of a company official to contact for further information.

20 C.F.R. § 639.7(d). Finally, the notice must be based on the best information available to the employer at the time the notice is served. See 20 C.F.R. § 639.7(a)(4); see also Graphic Commc'ns Int'l Union, Local 31-N v. Quebecor Printing (USA) Corp., 252 F.3d 296, 301 (4th Cir. 2001). "It is not the intent of the regulations, that errors in information provided in a notice that occur because events subsequently change or that are minor, inadvertent errors are to be the basis for finding a violation of WARN." 20 C.F.R. § 639.7(a)(4).

Dynasplint's notice explains that Dynasplint had been negotiating for two years with BB&T to work out a reasonable repayment plan. Mr. Hepburn states that he found a potential lender (MidCap) who was willing to become the new lender, but upon realizing that Dynasplint was involved in unresolved litigation, the lender withdrew its offer. Then, Mr. Hepburn states that after learning of MidCap's withdrawal on July 31, BB&T "threw up their hands" and started to take drastic actions on August 1, 2013. While Hepburn admits this statement was inaccurate, such an error is not a basis for finding a violation of the WARN Act. 20 C.F.R. § 639.7(a)(4). The notice stated Dynasplint intended to recall at least half of the laid off employees between November 2013 and January 2014. Hepburn testified that he was not aware of the number of employees that could be recalled at the time the notice was issued. (Hepburn Dep. 173:3-4). Further, the notice states that the layoffs were immediate and would be effective on Tuesday, August 6, 2013. The notice includes the name and contact information of a Dynasplint official to contact for more information and to help with filing for unemployment benefits. The Court, therefore, finds that the notice was sufficient under the WARN Act.[2] Accordingly, the Court will deny Plaintiffs' Motion for Summary Judgment.

---

[2] The notice does not contain any information regarding "bumping rights." While the Act does not define bumping rights, it has been defined as "a process where employees that are scheduled to be included in a reduction-in-force may be allowed to replace or 'bump' another employee who is not included in the lay-off." Nagel v. Sykes Enters., Inc., 383 F.Supp.2d 1180, 1196 n.17 (D.N.D. 2005). The Department of Labor stated that "technical violations of the notice requirements not intended to evade the purposes of WARN ought to be treated differently than either the failure to give notice or the giving of notice intended to evade the purposes of the Act." 54 Fed.Reg. 16042-01 (Apr. 20, 1989). Minor errors "should not be the basis for liability." Id. The Court, therefore, finds that the notice is not invalidated by the omission of bumping rights information.

For the foregoing reasons, Dynasplint's Motion for Summary Judgment (ECF No. 60) and Plaintiffs' Cross-Motion for Partial Summary Judgment (ECF No. 61) are DENIED. Despite the informal nature of this memorandum, it shall constitute an Order of this Court, and the Clerk is directed to docket it accordingly.

Very truly yours,

/s/
George L. Russell, III
United States District Judge